We find, therefore, that there was no fraudulent suppression of a material fact by the defendants, and that plaintiff was guilty of laches, in its attempt to rescind the contract, which has amounted to a waiver of such right, and that the judgment of the special term will not be disturbed. We do not express any opinion as to whether the plaintiff is liable for the loss in question, or as to which bond the loss is subject.

The judgment should be affirmed, with costs. All concur.

---

BENSEN v. MANHATTAN RY. CO. et al.

(Supreme Court, Appellate Division, First Department. February 12, 1897.)

1. JUDGMENT—SURROGATE'S COURT—JURISDICTION.
   The decree of a surrogate's court, determining the validity of certain devises, cannot be collaterally attacked on the ground that Laws 1870, c. 359, § 11, giving surrogates jurisdiction in certain proceedings to determine the validity of devises, is unconstitutional, as impairing the right of jury trial, where the parties made no objection to the jurisdiction.

2. SAME—CONCLUSIVENESS.
   The decree of a surrogate, under Laws 1870, c. 359, § 11, providing that where, on the probate of a will, the validity of any of its provisions is contested, the surrogate shall have the same power to determine the question as the supreme court, is conclusive on all parties in a collateral proceeding.

Appeal from judgment on report of referee.

Action by Diedrich Bensen against the Manhattan Railway Company and others for an injunction and damages by the construction and operation of defendants' elevated railroad in front of plaintiff's premises. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

This is the ordinary suit in equity brought against the defendants for an injunction restraining the further unlawful use of plaintiff's easements of light, air, and access caused by the construction, maintenance, and operation of the defendants' elevated road in front of the plaintiff's premises. By stipulation, the damages as to the fee and rental values of the premises in suit left nothing for the plaintiff to prove except title, and, upon the ground that the plaintiff had failed to show such title, the complaint was dismissed. The premises were owned by Mary M. Keese, who died April 8, 1877, leaving her surviving no husband, child, or parent, but two sisters only, as her sole heirs and next of kin. She left a will, executed one day before her death, which was duly admitted to probate in January, 1878. By such will she devised two certain pieces of real estate to different persons therein named, and made various bequests to the amount of $45,500; and by the residuary clause thereof she devised the premises in question and certain other pieces of real estate to St. Luke's Hospital, as a fund for the burial of the dead dying at that hospital. As shown by the decree admitting the will to probate, citations were issued, and, in addition to other parties, the two sisters appeared, and objections were filed to the validity, among others, of the bequest or devise to St. Luke's Hospital, upon the ground that it was in violation of chapter 319 of the General Laws of 1848; the sixth section of which, among other things, provided that no "devise or bequest shall be valid in any will which shall not have been made and executed at least two months before the death of the testator." The hospital claimed that chapter 253 of the Laws of 1870, which was a private act enacted in favor of the hospital, repealed the two-months clause in the law of 1848, cited above, and that by virtue of this special act the hospital acquired a good title to the premises in question under the devise in the will of the said Mary M. Keese. This contention was upheld, the surrogate holding that the re-

strictions in the act of 1848 applied only in a case where a testator left a wife, child, or parent, and was not applicable to the case of one leaving no such relative, and bequeathing property to a corporation formed under the act. Subsequently an action was brought in the supreme court by Ellsworth Elliot, who was sole acting executor of Mary M. Keese, against the hospital, for the purpose of having the real estate, of which the hospital had taken possession under the residuary clause of the will and the decision of the surrogate, sold to pay debts, testamentary expenses, and legacies. The heirs of Mrs. Keese were not made parties to this action. Therein a judgment was entered in 1879, ordering the sale of such property, under which it was sold, and the referee appointed conveyed the premises in suit by deed to St. Luke's Hospital, which subsequently conveyed the same to Henry Bischoff, who in turn conveyed to the plaintiff.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Edwin M. Felt, for appellant.
Henry C. Johnson, for respondents.

O'BRIEN, J.   The sole question to be decided is whether St. Luke's Hospital, through whom the plaintiff by mesne conveyances acquired title, ever had a valid title to the premises. It is insisted that the hospital took no title to the land under the residuary clause of the will, because it was executed one day prior to Mrs. Keese's death, and that the attempted trust was void, notwithstanding chapter 253 of the Laws of 1870; that the heirs of Mrs. Keese, by appearing on the probate of her will and unsuccessfully contesting the same, are not thereby estopped from elsewhere asserting their rights; that the supreme court action brought by the executor against the hospital for the purpose of charging the real estate with the payment of debts and legacies was unauthorized; that the heirs of Mrs. Keese, who were not made parties, are not in any manner concluded or affected by the judgment therein; and that the plaintiff's title has not been placed beyond question by 20 years' adverse possession. As shown by his opinion, the only question considered by the referee, material to be decided, was whether any title passed to St. Luke's Hospital under the residuary clause of the will.

In thus disposing of the rights of the parties the referee did not go far enough; for, though we conclude that he was right in holding that the hospital took no title under the will, there yet remains to be considered the question whether or not St. Luke's Hospital acquired title independently of the will under the sale by the referee in the supreme court action. The respondents contend that, as the heirs of Mrs. Keese were not made parties, they are not concluded by the judgment, and that the action itself was unauthorized, because the legacies were not charged upon the realty, and there being, as claimed, a sufficiency of personal assets to pay the debts. Whether or not the heirs at law were necessary parties to such action will depend upon the further question as to whether or not the surrogate had jurisdiction to pass upon the validity of the provisions of the will when upon the probate thereof such validity was contested; because we think it follows that, if the decree of the surrogate was a binding adjudication which could only be reviewed on appeal, it is not open to attack collaterally, and therefore that the validity of

the devise or bequest to the hospital having been sustained, and the latter having by virtue thereof acquired title to the premises, the only necessary parties to the supreme court action would be the executor and the hospital. In other words, if the hospital acquired, by force of the surrogate's decree, a right to the property, it, and not the heirs at law and next of kin, was the only necessary party, because its rights alone were therein affected.

This narrows the discussion, therefore, to the question whether the surrogate had jurisdiction upon the probate of the will to pass upon the validity of bequests relating to real estate. The statutes, as construed by all the authorities, agree in fixing the status of the surrogate's court as one of limited jurisdiction. It has no inherent or equitable jurisdiction, and its powers are conferred and limited by statute. From the organization of such courts in this state down to 1870, the surrogate was without jurisdiction to adjudge upon testamentary dispositions in a will so far as they related to real estate, and any attempt to usurp such jurisdiction was not binding on heirs or those interested in the real estate; nor would such persons be estopped by a surrogate's decree declaring the validity of such testamentary dispositions, whether made at the time of or subsequent to admitting the will to probate. By chapter 359, Laws 1870, § 11, however, the jurisdiction of the surrogate in New York county was extended, the provision being that:

"In any proceeding before the said surrogate to prove the last will and testament of any deceased person, as a will of real or personal estate, or of both real and personal estate, in case the validity of any of the dispositions contained in such will is contested, or their construction or legal effect called in question by any of the heirs or next of kin of the deceased, or any legatee or devisee named in the will, the surrogate shall have the same power and jurisdiction as is now vested in and exercised by the supreme court, to pass upon and determine the true construction, validity and legal effect thereof; he shall enter in his minutes any decision he may make in relation thereto, and any of the heirs or next of kin of the deceased, or any of such legatees or devisees, may appeal therefrom, in the same manner, and with the same effect, in every respect, as is now provided by law in relation to appeals from decisions of surrogates, admitting wills to probate or refusing the same."

The jurisdiction thus sought to be conferred was, as we have said, greater than before that act had ever been exercised by the surrogate; for therein we find for the first time the power given to the surrogate to adjudge upon testamentary dispositions relating to real estate. This act continued in force until 1880, when, at the adoption of the Code of Civil Procedure (section 2627), the statute in question was repealed, and the effect and extent of a decree of the surrogate admitting to probate a will of real property was expressed in the written law.

It may be conceded then that this provision of the Code embodies the law as it always had been prior to 1870 and as it has been by express statute re-enacted in 1880. But as the will of Mrs. Keese was admitted to probate during the period when the act of 1870, conferring jurisdiction upon the surrogate as to testamentary dispositions, was in force, the only questions remaining are as to the constitutionality of such an act, and whether, under a fair construction thereof, it conferred upon the surrogate the jurisdiction to make a binding decree

in reference to testamentary dispositions of real estate. The question whether the legislature could deprive either the heir or devisee of the right to try a question of title to real estate before a jury is a serious one, and we recall decisions in which it has been said that it is the settled law of this state that a party has a constitutional right to a trial by jury in any action which involves the title to land. But there are other cases, equally authoritative, which allow the parties to waive such right; and here it has been shown that the surrogate, having legislative sanction for his acts, was requested by the heirs at law to determine the validity of the bequests under the will of Mrs. Keese. We think that by such course they waived their constitutional right, if it existed, to have the question of title thus presented tried by a jury. Upon the construction of the act itself, we think its language is broad enough to show a legislative intent to confer upon the surrogate jurisdiction upon the probate of the will to determine the validity of the devises or bequests which were by the heirs at law assailed. His adjudication thereon in the form of a decree, which has not been appealed from nor in any way attacked, should be held binding upon the heirs at law. In determining the question, therefore, as to whether the hospital took a valid title under the judicial sale in the supreme court action, we must keep in mind the fact that the legislature in terms conferred upon the surrogate jurisdiction to determine questions as to real estate; that his determination was reached upon a proceeding for the probate of the will; that such will must now be regarded as having been a valid will, duly admitted to probate, and that probate has remained unrevoked. Assuming, therefore, that the surrogate's decree was binding, the executor in commencing the suit in the supreme court, and making the person to whom this real estate had been devised—who was the only party having any rights to be affected—a party defendant, brought before the court all the necessary parties; and in such an action, brought under such circumstances, the heirs at law were not necessary parties.

We have not overlooked the case of Bevan v. Cooper, 72 N. Y. 328, in which it was said: "The surrogate's court is one of limited jurisdiction, having only what is given by the express terms of the statutes, and some powers incidental thereto." It was therein held that in a proceeding to charge a legacy upon a residuary estate in the hands of an executor, in respect to which there is a question of fact or law, a surrogate has no jurisdiction to decide the question upon the settlement of the executor's accounts. In that case the provision of the act of 1870 (chapter 359, § 11), to which we have referred, was cited, and it was held that this provision "applies only and is expressly restricted to proceedings to prove a will." As already pointed out, the validity of the title of the hospital was presented and determined upon the proceeding to probate the will; and therefore the case cited is not an authority as against the construction which we have placed upon the wording of the act of 1870, namely, that it does upon proceedings to probate a will confer jurisdiction upon the surrogate to determine the validity of testamentary dispositions affecting real estate.

Our conclusion is that while we might agree with the referee, were the question an open one, that the determination of the surrogate was erroneous, his decree, not having been appealed from, and having been made in a proceeding to which the heirs at law were parties, is binding, and cannot be collaterally attacked by the present defendants; that such heirs at law were not necessary parties in the supreme court action; and that under a judicial sale in such action brought by the executor against the person whose title was confirmed by the surrogate's decree, and the only party having any rights to be affected, the hospital, having purchased on such judicial sale, acquired a valid title. We think, therefore, that the judgment should be reversed; and, as the parties by stipulation have agreed as to the judgment to be entered, it should, pursuant to the stipulation, be in favor of the plaintiff, with costs in the court below and here.

VAN BRUNT, P. J., and WILLIAMS, J., concur.

INGRAHAM, J. (concurring). As stated by Mr. Justice O'BRIEN in his opinion, the sole question to be decided on this appeal is whether St. Luke's Hospital, from which the plaintiff acquired title, ever had a valid title to the premises in question. That question depends upon the validity of the will of one Mary M. Keese, who died April 8, 1877, leaving her surviving two sisters, her only heirs at law. The referee, upon an examination of the will, held that the devise of the residuary estate in this will to the New York hospital was void, as having been made less than two months prior to the death of the testatrix. Without considering the effect of the decree of the surrogate, entered on the 31st day of January, 1878, admitting this will to probate, it is quite clear that, if the bequest to the New York hospital was void, the title of the property vested in the testatrix's heirs at law, and the subsequent action in which the property was sold would not divest them of that title, as they were not parties to that action. Unless, therefore, the question as to the validity of this will is settled by a binding adjudication of the surrogate as to the validity of this residuary bequest, the question as to the validity of the bequest to St. Luke's Hospital must be determined. It appears that on the application to prove this will before the surrogate, in which proceeding the heirs at law who were parties, appearing by counsel, filed objections in opposition thereto, a decree was entered which recited that the surrogate, having examined the subscribing witnesses to the will, and having heard the proofs and allegations of the parties, and that "a contest having arisen as to the validity of certain of the devises and bequests contained in the said will, that is to say, the bequest to the residuary legatee, St. Luke's Hospital, in the city of New York, in the seventh clause, the bequest to the New York Society Library, in the ninth clause, the bequest to the President and Fellows of Yale College, in the tenth clause, and the devises and bequests to St. Luke's Hospital, in the city of New York, in the eleventh and twelfth clauses of said will (these last clauses, or the twelfth clause, being bequests of all the rest, residue, and remain-

der of the testator's estate), and counsel for the respective parties having been heard and due deliberation being had upon the proceedings aforesaid, it is now, upon motion, adjudged and decreed" by the surrogate that the said will was the last will and testament of the said Mary M. Keese, was executed and attested in the manner prescribed by law for the execution and attestation of last wills and testaments, and that the said last will and testament be admitted to probate; and it is further decreed and adjudged by the said surrogate that the said several devises and bequests contained in the seventh, ninth, tenth, eleventh, and twelfth clauses of the said will, and all the provisions of the said will and dispositions therein contained, are valid, and that the several corporations above named, viz. St. Luke's Hospital, in the city of New York, the New York Society Library, the President and Fellows of Yale College, are authorized and entitled to take and hold the money and property in said will devised and bequeathed to them respectively.

It is clear that, if the surrogate had jurisdiction to pass upon the question of the validity of the devise and bequest of the residuary estate to the St. Luke's Hospital, this adjudication is binding upon all parties to the proceeding before him. Prior to the passage of the act of 1870, it is clear that the surrogate had no authority to determine the validity of a disposition of real estate by will. He had authority to admit a will disposing of real estate to probate, and such decree was prima facie evidence of the due execution of the will, and the testamentary capacity of the testatrix at the time of the execution of the will. By section 11 of chapter 359 of the Laws of 1870, which act was in force at the time of the proceeding for the probate of this will, it is provided that "in any proceeding before the said surrogate to prove the last will and testament of any deceased person, as a will of real or personal estate, or of both real and personal estate, in case the validity of any of the dispositions contained in such will is contested, or the construction or legal effect called in question by any of the heirs or next of kin of the deceased, or any legatee or devisee named in the will, the surrogate shall have the same power and jurisdiction as is now vested in and exercised by the supreme court, to pass upon and determine the true construction, validity and legal effect thereof"; and the only question presented here is whether or not this provision gave to the surrogate jurisdiction to adjudge that the residuary bequest to the St. Luke's Hospital was valid, and whether or not, under the twelfth clause of the will, the St. Luke's Hospital was authorized and entitled to take and hold the residuary estate of the testatrix devised and bequeathed to it. It is clear that the proceeding in which this decree was entered was a proceeding before the surrogate of New York county, to prove the last will and testament of Mary M. Keese, deceased. It is also clear that the heirs at law and next of kin of the testatrix are parties to that proceeding, and were represented before the surrogate by counsel; that a contest had arisen as to the validity of this devise to the

St. Luke's Hospital of the residuary estate of the testatrix, and that the counsel for the respective parties were heard upon that question before the surrogate; and that, upon such hearing, the surrogate adjudged as to the validity of the disposition contained in the will by which the St. Luke's Hospital became the residuary legatee and devisee of the testatrix, and adjudged as to the construction and legal effect of such bequest. This adjudication, therefore, appears to be in all respects a valid adjudication, by which the residuary bequest and devise to the St. Luke's Hospital was adjudged to be valid, and sufficient to vest in the St. Luke's Hospital the title to the property in question. If the legislature had the power to vest in the surrogate jurisdiction to determine this question of the validity of this bequest and devise of the residuary estate to the St. Luke's Hospital, it is quite clear that such adjudication was binding upon all the parties to the proceeding. The power of the legislature to vest this jurisdiction in the surrogate does not seem to have been questioned in any of the cases to which our attention has been called; and by the repeal of this act in 1880, and the substitution for it of the section of the Code of Civil Procedure, it would appear that the surrogate had now no jurisdiction to determine this question. In the few instances in which this act of 1870 has been presented to the court, the question as to the power of the legislature to pass the act seems to have been conceded. Thus, in the case of Bevan v. Cooper, 72 N. Y. 329, the surrogate of New York, upon a final accounting of the executors, construed the will by holding that certain legacies were not charged upon the residuary estate, which consisted of realty. In that case the court said:

"The act of 1870 does not affect the question before us adversely to these views. It is rather a legislative declaration that such jurisdiction does not exist without express conferment by statute. By that statute the same power and jurisdiction is given to the surrogate of New York, in any proceeding before him to prove a will, as is vested in the supreme court, to determine the true construction, validity, and legal effect of the will. It is seen that the power thereby given is restricted to a proceeding to prove a will, and to that only."

But as this proceeding in which this decree was entered was a proceeding to prove the will, the jurisdiction conferred by the statute applied.

The decree of the surrogate relied on in the case of Stilwell v. Carpenter, 59 N. Y. 420, arose upon an accounting, and was not a decree entered in a proceeding before the surrogate to prove the last will and testament of a deceased person, and it was the surrogate of Kings county who made the decree, the act of 1870 applying only to the surrogate of New York county. And in the case of Riggs v. Cragg, 89 N. Y. 480, the court, when holding that the surrogate had no general jurisdiction in the construction of wills, held that where the right to a legacy depends upon a question of construction, which must be determined before a decree for distribution can be made, the surrogate has jurisdiction upon a final accounting, where all parties interested are before the court, to make a distribution. No doubt was there intimated as to the power of the legislature to con-

fer upon the surrogate jurisdiction to construe a will; and it was even there held to be vested in him as incident to the power to grant a decree for final distribution; and many cases are cited where the court has sustained the power of the surrogate to construe a will where it is necessary for the accounting and distribution. We have thus an express provision of law giving to the surrogate in a proceeding before him to prove a will the same power and jurisdiction as was then vested in and exercised by the supreme court to pass upon and determine the true construction, validity, and legal effect of any of the dispositions contained in said will by an heir of the deceased. The appearance of such heirs before the surrogate, their presenting to him the question as to the validity of the disposition of the residuary estate of the decedent to the New York hospital, and the adjudication by him of such disposition, is legal, and vests the estate in such hospital; and I can see no reason why that is not a binding adjudication upon all the parties to that proceeding, including the heirs at law of the deceased, which cannot be questioned, except on a direct appeal from that decree.

The point is made by the defendant that this provision of the act of 1870 is unconstitutional, as taking away from the heirs at law the right to a trial by a jury of their right to this estate. The question presented to the surrogate was one as to the construction of the will. It is not pretended that a question of fact was involved, but it was a pure question of law, which, in the supreme court, would have been decided by the court and not the jury. The next of kin had no right to have the question of the construction of the will, and as to whether or not the provisions of the act of 1848, under which the New York hospital was incorporated, avoided the devise, determined; but, even if the heirs at law had such a right, their appearance before the surrogate, and submitting to the jurisdiction without objection, or without demanding a trial by a jury, was a waiver of that right, and gave the surrogate jurisdiction. I think, therefore, that the decree of the surrogate was conclusive upon all the parties to that proceeding, and that having passed upon the validity and legal effect of this will, and adjudicated that the New York hospital took the residuary estate under it, the heirs at law were bound by that adjudication, and under it the New York hospital took a good title to the residuary estate of the testatrix. I concur, therefore, that, under the stipulation of the parties, the judgment should be reversed, and judgment entered in favor of the plaintiff in pursuance of the stipulation, with costs to the plaintiff in this court and in the court below.

PATTERSON, J., concurs.